

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2017

**STATE OF TENNESSEE v. LARSHEIKA HILL**

**Appeal from the Circuit Court for Marshall County**
**No. 13-CR-150     Franklin L. Russell, Judge**

_____

**No. M2016-00526-CCA-R3-CD**

_____

The Appellant, Larsheika Hill, appeals the Marshall County Circuit Court's revocation of her community corrections sentence for selling or delivering cocaine and order that she serve ten years in confinement. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Matthew D. Wilson (on appeal), Lewisburg, Tennessee, and Melissa L. Thomas (at trial), Fayetteville, Tennessee, for the appellant, Larsheika Hill.

Herbert H. Slatery III, Attorney General and Reporter; Sohpia S. Lee, Senior Counsel; Robert J. Carter, District Attorney General; and Felicia Walkup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On October 10, 2014, the Appellant pled guilty to selling or delivering one-half gram or more of cocaine under a theory of criminal responsibility, a Class B felony. On June 12, 2015, the trial court imposed a sentence of nine years, six months to be served in community corrections. Less than six months later, on December 11, 2015, the Appellant's community corrections supervisor filed an affidavit stating that the Appellant had violated the conditions of community corrections by testing positive for cocaine and opiates on November 23, 2015.

At the revocation hearing, Heather Nichols testified that she was the Appellant's community corrections supervisor. At first, the Appellant had to report to Nichols twice per week. The Appellant was present at every scheduled appointment and paid her supervision and court fees each month as required. The Appellant had some health problems and reported all of her prescribed medications to Nichols. However, the Appellant failed an oral drug test on November 23, 2015, testing positive for cocaine in the amount of seven nanograms per milliliter. The drug test was also positive for opiates, but the Appellant had a valid prescription for hydrocodone. Nichols and the Appellant discussed the test results. The Appellant claimed she did not use cocaine, so Nichols contacted Aegis Laboratory, which had performed the test, and requested additional "findings." She received a report from Aegis, and the report did not indicate that the Appellant's test result was a false positive for cocaine.

The State introduced into evidence the Appellant's drug test results and the subsequent report requested by Nichols. According to the report, an "initial screen" was performed on the Appellant's specimen and was presumptively positive for opiates and cocaine metabolite. A second test was performed using liquid chromatography/mass spectrometry to identify the specific drugs and was positive for hydrocodone, dihydrocodeine, norhydrocodone, and cocaine. The report stated that a list of medications had been provided to Aegis by the Appellant and that hydrocodone could be the source for the Appellant's positive result for opiates. However, none of the medications was a source for the cocaine. The report stated that the Appellant's test results were consistent with her use of opiates and cocaine within three days prior to the collection of her specimen.

On cross-examination, Nichols testified that the Appellant committed no other violations, and she described the amount of cocaine in the Appellant's system as "a low number." She said that since she had been supervising the Appellant, the Appellant had developed Bell's palsy and that "you could tell physically the draw in her face."

The Appellant testified that after she pled guilty in this case, she was diagnosed with Bell's palsy. Her face was paralyzed for a couple of months and then her immune system "just shut down." Her white blood cell count was low because she was "fighting off" the Bell's palsy virus, and she developed a knot on her back because she "layed around." The Appellant began physical therapy for her back pain but was unable to complete therapy because she "got locked up" for the positive drug test. She said she was "in bad shape" and could not even bend over, that she was "too sick to do drugs," and that she would not risk using cocaine due to all the medications she was taking. She said she had two children and stayed with her mother most of the time because she was always sick. She stated that she used to use marijuana but had not smoked it since the day she was sentenced and that "[c]ocaine has never been my choice of drug, never." She said, "I ain't done no drugs. I done everything I was supposed to do while I was on

Community Corrections.  This is crazy."

On cross-examination, the Appellant acknowledged that she pled guilty to a "coke related" charge but said, "My charge was by association."  She acknowledged that she had a history involving cocaine.

Sherleen Harris, the Appellant's mother, testified that the Appellant had been in poor health since the Appellant's guilty plea.  The Appellant suffered from fibromyalgia and osteosclerosis and was taking different medications.  Harris said that the Appellant had been coming to her house three or four days per week so that she could take care of the Appellant and that the Appellant had not been out at night to party.  She said she had no idea how the Appellant tested positive for cocaine.

On cross-examination, Harris testified that the Appellant did not live with her. She acknowledged that she was not with the Appellant all of the time.

The trial court noted that the Appellant looked "drastically different" from when it last saw her and that it would not have recognized her.  The court stated that it had "absolutely no doubt whatsoever" that she had used cocaine since being placed in community corrections and that "[t]his was an accurate positive."  The court commended Heather Nichols for requesting the follow-up report from Aegis and stated that the report "makes it clear that this was not a false positive or related to the medication she was taking."  The court revoked the Appellant's community corrections sentence, resentenced her, and ordered that she serve ten years in confinement.[1]

## II.  Analysis

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985.  See Tenn. Code Ann. § 40-36-101.  The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

---

[1] The resentencing judgment of conviction shows that the Appellant received credit for her time in community corrections and jail.

Tenn. Code Ann. § 40-36-106(e)(4).  A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence.  See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).  The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion.  Id.  An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred.  See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

On appeal, the Appellant contends that the trial court abused its discretion by finding that she violated the terms of community corrections because "seven one-billionths of a gram . . . should not be considered 'substantial evidence' of a violation." However, the simple fact is that the Appellant tested positive for cocaine, even though the amount of cocaine in her system was low.  The trial court found that the Appellant used cocaine while in community corrections, and the test results and subsequent report support that finding.  Accordingly, we conclude that the trial court did not abuse its discretion by revoking the Appellant's community corrections sentence.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE